PETERSON v. METTLER et ux.

(District Court, W. D. Washington, S. D. August 26, 1912.)

No. 952.

1. EQUITY (§ 409*)—REFERENCE BY CONSENT—FINDINGS OF MASTER.

The findings of a special master to whom a cause has been referred by consent to report the facts with his conclusions thereon are presumptively correct, and will not be disturbed, where made on conflicting evidence.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 904, 920–923; Dec. Dig. § 409.*]

2. BANKRUPTCY (§ 303*)—FRAUDULENT TRANSFER OF PROPERTY—SUIT BY TRUSTEE.

Evidence that a bankrupt, when insolvent, conveyed valuable property to his brother for an inadequate consideration, that by agreement between them the brother withheld the deeds from record, and that the bankrupt afterward borrowed large sums of money on his representation that he owned such property, held sufficient to establish actual fraud, and to entitle the bankrupt's trustee to recover the property.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. § 303.*]

In Equity. Suit by Gilbert E. Peterson, trustee in bankruptcy of Simon Mettler and Anna Mettler, his wife, against Carl Mettler and Mary Mettler, his wife. On exceptions to report of special master. Exceptions overruled, and decree for complainant.

Bates, Peer & Peterson, for complainant.
Burdick & McQuesten, for defendants.

CUSHMAN, District Judge. This suit was brought on the part of the trustee in bankruptcy of the estate of Simon Mettler and Anna Mettler, his wife, to have an alleged preference to Carl Mettler and Mary Mettler, his wife, set aside and recovered to the trus-

tec on the ground that the said conveyances were to defraud creditors.

After issue was joined upon the allegations in the complaint of illegal preference and fraud, and upon the defense of an innocent purchaser for value, the purchase alleged to have been made more than four months prior to the institution of bankruptcy proceedings, by consent of the parties, the cause was referred to a special master to take testimony, "and ascertain and report the facts with his conclusions thereon."

The referee, in part, finds and concludes as follows:

"The defendant Carl Mettler and the bankrupt, Simon Mettler, are brothers, who were engaged for a period of about 15 years in the dairy business. During this period considerable property was acquired by the two brothers and held by them as tenants in common. Some five or six years ago they sold out the business. Since that time they have not been engaged in business together, although they still continued to hold, as tenants in common, the property acquired by them while in the dairy business."

That, in 1909, the bankrupt, Simon Mettler, became interested in a corporation engaged in construction contracts. To assist the said bankrupt in raising money to carry on the work of this corporation, in June and August, 1910, the defendants joined with the bankrupts in deeding certain of the property. These deeds were in effect mortgages—the bankrupts, at the same time, deeding to the defendant, Carl Mettler, other of the lands of the two brothers. The latter deeds were not recorded until in the month of November, 1910. It is to set aside these that this suit is brought. That in August and October, 1910, by means of representations that he was the owner of several parcels of real property, including that already deeded to the defendant, the bankrupt, Simon Mettler, was enabled to borrow $55,000. which is still unpaid. That no property of the bankrupt came into the hands of the receiver. Simon Mettler was insolvent June 1, 1910. There was evidence of statements made by the bankrupt, in the presence of the defendant Carl Mettler, to the effect that, when he, Simon Mettler, gave these deeds to the defendant, he requested the latter to keep them off the records so his credit would not be ruined.

From the testimony, the master further finds and concludes:

"While the evidence is very long and complicated, and at times contradictory, it cannot be thoroughly gone over without coming to the conclusion that there was fraud, actual or constructive, on the part of Carl in accepting deeds to the property in litigation from his brother, Simon, and keeping the same off record, while the fact that they were not recorded was made use of by Simon to secure large loans with which to carry on the work of the Wells Construction Company.

"* * * The other evidence alone seems sufficient to support the contention of the trustee that Carl was aware of the financial difficulties of his brother and had reasonable grounds to believe that, if the deeds to Carl were withheld from record, others might be induced to advance money in ignorance of the transfer of Simon's property. * * * ,

"While the evidence tends to show that there was an actual agreement between Simon and Carl to withhold the deeds from record, cases even go so far as to hold that such an agreement is not necessarily present to empower the trustee to set aside the conveyance.

"* * * With the transfer of the property kept off the records for a

most unreasonable time, whether willfully and according to agreement between the two brothers, as appears from the record, or negligently as Carl would have us believe, with no visible change in the possession of the property and with creditors advancing money on the faith of the record and representations of Simon, the way would be open to the deceitful and fraudulent, so that property rights would be insecure. * * *

"While not entirely applicable to this case, inasmuch as it appears Carl knew, or at least had reasonable grounds to believe, that his brother Simon would obtain credit on the faith of the property withheld from record, it may not be entirely inappropriate to recall the old, familiar rule that, where one of two innocent persons must suffer because of the wrongful acts of a third, he whose conduct put it within the power of the wrongdoer to commit the wrong, or occasion the loss, must bear the burden."

After reviewing the evidence on the question of the relative value of the property deeded to Simon and that conveyed to the defendant in consideration therefor, the master finds and concludes:

"According to this, Carl paid for the property deeded to him less than half of the value. While these figures are largely speculative and the estimates of the various witnesses differ to a considerable extent, and are, perhaps, unreliable, yet the totals are so vastly different that it seems safe to at least conclude from these figures that the consideration passing to Simon for his conveyances to Carl was grossly inadequate. This inadequacy, standing alone, would be a matter of little or no importance, but, when coupled with the evidence of fraud contained in this case, it is a matter of importance and weight. * * *

"In the light of all these circumstances, coupled with the evidence of fraud, of knowledge of financial difficulties, of agreement to withhold from record and the actual failure to record, of inadequate consideration, of the failure of Simon to testify, of the loaning of large sums of money on the strength of the public records and representations of Simon, of the relationship of the parties, of actual insolvency at the time of the transfer, and inconsistencies in the testimony of Carl, an interested witness, there must be but one conclusion, that there was fraud, actual or constructive, and that the trustee should be granted the relief prayed for."

The defendants except to the rulings and report of the master upon many grounds. It will only be necessary to discuss two of these. The defendants excepted to the master's excluding the deposition of Simon Mettler upon the hearing. This exception was sustained and the deposition admitted. The findings and conclusions are excepted to on the grounds that they are contrary to law and against the weight of the evidence.

[1] The first question to arise is whether, in view of the reference to the special master having been by consent of parties "to report the facts with his conclusions thereon," this court should now consider the evidence anew. There was evidence to support the master's findings. The most that can be said is that there was a conflict in the testimony. The findings are, therefore, presumptively, correct. Davis v. Schwartz, 155 U. S. 631, at 636, 15 Sup. Ct. 237, 39 L. Ed. 289; In re Senoia Duck Mills (D. C.) 193 Fed. 711, at 719; Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764; Cook v. Robinson et al. (C. C. A.) 194 Fed. 755, 759.

It may be contended that this rule is not applicable in this case for the reason that the deposition of Simon Mettler was not considered by the special master; but, in view of the condemnation of Simon Mettler's conduct by the master, the character of his testi-

mony, and the nature of the evidence on which the master based his ruling, it is clear that the findings and conclusion would not have been otherwise had the deposition been considered.

[2] Not·to place the decision upon this ground alone, the evidence has been considered and is held sufficient, not only to support the master's findings, but to show that there was actual fraud on the part of the defendant Carl Mettler, in withholding the deeds from record, to enable his brother to extend his credit upon the strength of the reputed and apparent ownership of the property involved. Section 70e, Bankr. Act, 1 Fed. Stat. Ann. 702; Blennerhasset v. Sherman, 105 U. S. 100, 26 L. Ed. 1080; Bush v. Export Storage Co. (C. C.) 136 Fed. 918, 921; O'Leary v. Duvall, 10 Wash. 666, 671, 39 Pac. 163; Clayton v. Exchange Bank, 121 Fed. 630, 633, 57 C. C. A. 656; Post v. Berry, 175 Fed. 564, 99 C. C. A. 186; In re Mission Fixture Mantel Co. (D. C.) 180 Fed. 263; Adams v. Curtis, 137 Ind. 175, 36 N. E. 1095, 1097; Butler v. Thompson, 45 W. Va. 660, 31 S. E. 960, 72 Am. St. Rep. 838; Bunch v. Schaer, 66 Ark. 98, 48 S. W. 1071. The findings made by the master ʼin summing up show badges of fraud sufficient in their number and nature to warrant the finding of actual fraud. 20 Cyc. 439–453, and citations. These findings are supported by the evidence.

"All deeds, mortgages and assignments of mortgages shall be recorded in the office of the county auditor of the county where the land is situated, and shall be valid as against bona fide purchasers from the date of their filing for record in said office; and, when so filed shall be notice to all the world." Section 4441, Pierce's Code Wash.; section 8781, Rem. & Bal. Code Wash.

The court's attention has been called to the case In re Hunt, 139 Fed. 283, which, under section 13 of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 550 [U. S. Comp. St. 1901, p. 3427]), as amended by Act Feb. 5, 1903, c. 487, 32 Stat. 799 (U. S. Comp. St. Supp. 1909, p. 1314), providing that the four months period for the transfer of property, within which a transfer of the character defined shall constitute a preference, shall not expire until four months after the recording, or registering of the transfer, if by law such recording or registering is required, holds that the time does not run from the recording under a state statute, by which recording is not required except as against subsequent purchasers or mortgagees in good faith for value.

It is claimed that this holding is opposed to that in Loeser v. Savings Deposit Bank & Trust Co., 148 Fed. 975, 78 C. C. A. 597, 18 L. R. A. (N. S.) 1233, wherein it was decided that a state statute which requires a conveyance or transfer to be recorded, in order to be effectual against any class or classes of persons, is a law by which such recording is "required" within the meaning of the above-mentioned act defining preferences.

In view of the conclusion reached and the finding that actual fraud has been shown, it is not necessary in this case to consider those cases, and determine which, if either, authority would be controlling in the present suit under our statute.

The exceptions to the master's report, other than as above indicated, are overruled.